The testator, by separate clauses in his will, devises to his two sons, Cullen and Lawrence Wood, two several tracts of land, to them respectively in fee simple. In a third clause he desires that if either of his two sons should die without lawful issue begotten of their bodies, that his son, Joseph, should have the land of the one so first dying; and in that event he devises the land of the one so first dying to his son, Jonas, in fee simple. In the succeeding clause he desires that, in case both his sons, Cullen and Lawrence, should die without lawful issue begotten of their bodies, James Wood should have the lands of the one so dying last in fee simple.
After the death of the testator, Cullen Wood entered upon the land devised to him, and died seized, leaving no issue; living, his brother, Lawrence Wood. The lessor of the plaintiff intermarried with the widow and devisee of Jonas.
The first question in this case is whether the limitation in the will of Jonas Wood to his son, Jonas, is effectual as an executory devise. The intention of the testator ought to be collected from the whole of the will taken together, and, therefore, though a fee simple is given to Cullen by one clause, yet it is qualified and narrowed down by such words as would, before the Act of 1784, have made it into an estate tail general. In consequence of that act, the estate devised to Cullen was a fee simple; and therefore the ulterior limitations to Jonas and James would have been clearly void, as common law conveyances. It is not necessary to show that they cannot be supported as contingent remainders; for it is an axiom that one fee cannot be in remainder after another. The limitation to James also is entirely unsupported by any of the principles which govern executory devises. It is limited to take effect after an indefinite failure of the brother who died last; and there is not in the will the slightest ground upon which a restriction can even (404) be argued. *Page 336 
With respect to the devise over to Jonas, it seems to me that the arguments offered in support of it are founded on a misconstruction of the will, which supposes that the limitation to Jonas is upon a contingency which must happen, if ever, within a life in being, and that consequently there is no tendency to a perpetuity. If the words of the will would fairly warrant the construction that the testator meant the limitation to Jonas to take effect only in the event of one brother dying without issue, in the lifetime of the other, nothing more would be necessary to support it as a good executory devise, according to the case of Pells v. Brown, Cro. Fac., 590. But the words "so first dying" must not be separated from the antecedent words, "without lawful issue begotten of their bodies"; for that were to make a supposition, contrary to the express words of the will, that the testator did not mean to provide for the issue of his two sons; and would lead to this consequence, that Jonas should take the land of him who died first, though he might have left issue. But the intention clearly was that Jonas should not take as long as there was any issue of the son who should die first. It follows, that if one of the sons had died leaving issue, which should afterwards fail in any indefinite period of time, living the issue of the other son, the limitation to Jonas would take effect, if the intention of the testator consisted with the rules of law. It is a limitation upon an unrestricted failure of issue, and would, if sanctioned, produce all the mischief which the law is so solicitous to avoid; and the cases to be found in the books relative to perpetuities apply a fortiori to the circumstances of this country, where restraints upon alienation are equally adverse to the spirit of the Constitution and the form of government. It does not appear to me that this case is to be distinguished in its material circumstances from that ofForth v. Chapman, 1 P. Williams', 667. There the testator gave the residue of his real and personal estate to his nephews, W. and G., and if either of them should die and leave no issue of their respective bodies, then he gave the premises to D. It was decided that the construction (405) as to the freehold was, that if W. or G. died without issue generally, and of course that the limitation over to D. was too remote. And were this the case of personalty, there are no expressions or circumstances in the will that would afford a ground for construing the words "first dying without heirs of his body lawfully begotten," a dying in the lifetime of the survivor, notwithstanding the inclination of courts to support such devises over.
The next inquiry is whether the words of Cullen Wood's will are sufficiently comprehensive to convey these lands to his widow? After sundry bequests of chattels, the residuary clause gives to his wife all the remainder of his estate, whether within doors or without, not before *Page 337 
given away — all the residue of his estate, and every part thereof, she paying all his just debts, etc., to her and her heirs forever. The word estate comprehends everything a man owns, real and personal, and ought not to be limited in its construction, unless connected with some other word which must necessarily have that effect; or unless it is so used by the testator as to indicate his intent that it should not be received in its ordinary acceptation. But here he adds the words, "and every part thereof"; and the devise is accompanied with a condition, that his wife shall pay his debts out of it. It is also expressed in such language as is applicable to the devise of real property; and the impression made upon the mind by the whole tenor of this will is, that he did not mean to die intestate as to any part of his property. The case of Tanner v. Morse, in cases temp. Talbot, and other cases therein referred to, seem to be decisive on this question.